## Francis W. Dana *versus* William Underwood.

Before the adoption of the rule of court, that in an action on a promissory note the defendant shall not, on the trial, be allowed to deny the signature of any party to the note unless he shall have filed a notice in writing, of his intention to deny it, a trial was had at which the genuineness of the indorser's signature was contested. It was *held*, that this was a sufficient notice that, at a subsequent trial after the rule went into operation, the plaintiff would be required to prove this signature.

A promissory note, payable on demand, with the payee's name indorsed, was put into the hands of a broker, to raise money upon it ; and one S. lent the money, but upon a verbal agreement that the broker should hold himself responsible as guarantee, and should repay the money upon short notice ; and the broker, on payment being demanded of him, applied to the maker, who said he could not then take up the note, but requested the broker to do it, which he did ; and afterwards the broker, on making a settlement between himself and the plaintiff, negotiated the note to the plaintiff. In an action by the plaintiff against the maker, it was *held*, that the note was not admissible in evidence in support of the money counts, without proof of the signature of the payee.

A promissory note purporting to be payable to a real person and indorsed in a forged handwriting resembling and intended to pass for his, cannot be considered as a note payable to a fictitious payee and so negotiable without being indorsed.

A deposition taken by one party, in which he has embodied, by way of interrogatory, a copy of a deposition of the same witness previously taken in the same action by the other party but which this other party does not see fit to use, is not admissible in evidence.

Assumpsit. The plaintiff declared upon a note of hand, dated November 3d, 1831, whereby the defendant and Charles Brown jointly and severally promised to pay Nathaniel Brown or order $ 1000, on demand with interest ; which note, it was averred, was indorsed on the same day by Nathaniel Brown to the plaintiff. The declaration also contained the common money counts. The defendant pleaded the general issue. The action was commenced on the 24th of December, 1833.

At the trial, before *Morton* J., the plaintiff produced the note above described. The defendant admitted his own signature and that of Charles Brown to be genuine, but asserted that the signature of Nathaniel Brown on the back of the note was a forgery. The plaintiff objected, that under the present Rules of the Court, (Rule 53,) the defendant was precluded from this inquiry, as he had not filed a written notice that this signature would be disputed ; but the objection was overruled, on the ground that the genuineness of this signature had been contested in a former trial.

Dana
v.
Underwood.

The plaintiff then offered the note as evidence under the money counts, and insisted that as it purported to be uttered by the defendant as genuine, it was evidence against him under the money counts, even if the signature of the indorser were forged ; but this position was overruled, and the judge required the plaintiff to prove the signature of the indorser.

The plaintiff then called several witnesses who testified in favor of the genuineness of the signature of the indorser. From their testimony it also appeared, that Charles Brown absconded about the 6th of October, 1833, under the imputation of having committed numerous forgeries ; that Nathaniel used to transact his business at Charles's counting room ; and that Nathaniel had deceased.

Thomas J. Shelton testified, that he first saw this note on the day of its date ; that Noah Edwards, a broker, had previously called on him to negotiate a loan, and proposed the names of Charles and Nathaniel Brown, which the witness declined ; that Edwards then proposed in addition the name of Underwood as a promiser, upon which the witness agreed to make the loan ; that Edwards afterwards brought him this note, for which he paid Edwards $ 1000, with the understanding that he was to have his money again with interest on two or three days notice and that he was to look to Edwards ; that he subsequently demanded the money of Edwards, and Edwards said he would notify C. Brown ; that afterwards Edwards said he had seen C. Brown, and that it was not convenient for him (Brown) to pay the note at the time ; that the witness thereupon told Edwards he must hold him (Edwards) to his bargain, at any rate ; that Edwards thereupon gave him the principal and interest due on the note, and took the note himself; and that the witness understood that the money he received was Edwards's own money and not C. Brown's, and that Edwards became the lender on the note.

The plaintiff again insisted, that upon this testimony the note was evidence for the holder under the money counts, whether Nathaniel Brown's signature was genuine or not ; but the position was overruled.

The defendant then read the deposition of Noah Edwards, subject to the plaintiff's objection noted therein. The plain-

tiff had formerly taken the deposition of Edwards for this ac-
tion, and the defendant had procured a copy of it from the
magistrate before whom it was taken.  Subsequently the de-
fendant took the deposition in question, of the same deponent,
and by way of interrogatory, embodied therein the copy of the
former deposition ; and for this cause the deposition read in
evidence was objected to by the plaintiff.

.Dana
*v.*
Underwood.

The deposition of Edwards coincided with the testimony of
Shelton.  He stated further, that the note remained a consid-
erable time in his hands unpaid, until Charles Brown absconded,
and Nathaniel Brown died ; and that it was negotiated on a
settlement by Edwards with the plaintiff, and passed to the
plaintiff for the face of it.

The jury returned a verdict for the defendant, and the plaintiff
moved for a new trial, on account of the rulings of the judge,
and because the verdict was against the evidence.

*W. H. Gardiner*, for the plaintiff, insisted, among other
points, that a note in the hands of a *bonâ fide* holder is evi-
dence on the money counts, against the promiser, even if the
signature of the indorser has been forged.  Here Shelton paid
a consideration for the note, which went to the use of the
promisers, and within the case of *Boardman* v. *Gore*, 15 Mass.
R. 336, he might have recovered on the money counts.  He,
for value received, passed the note to Edwards, who stands as
Shelton did ; and in like manner Edwards passed it to Dana.
If the action were against Charles Brown, he could not set up
his own forgery in defence ; neither shall the defendant be al-
lowed to set it up, when he reposed confidence in Charles
Brown to get the signature of Nathaniel Brown.  *Wild* v.
*Fisher*, 4 Pick. 421 ; *Cole* v. *Cushing*, 8 Pick. 48 ; *Ells-
worth* v. *Brewer*, 11 Pick. 316.

*March 23d.*

The note may be treated as a note payable to a fictitious
payee and therefore payable to bearer, it being in effect the
same thing whether the payee is a fictitious person, or a real
person who is not a party to the note.  *Tatlock* v. *Harris*, 3
T. R. 174 ; Bayley on Bills (Phillips and Sewall's 2d ed.)
26, 28, and cases cited ; *Foster* v. *Shattuck*, 2 N. Hamp. R.
446.

*S. D. Parker*, for the defendant.

9*

SHAW C. J. delivered the opinion of the Court. The plaintiff insisted that he ought not to have been required to prove the indorsement of Nathaniel Brown, without a prev'ous notice that such proof would be required, conformably to the rules recently adopted. It appears that this cause was once tried before these rules went into operation, that the same grounds of defence were then taken, and proof was required and offered upon this point. The object of the rule certainly is, not to take away any legal grounds of defence, but to facilitate trials and prevent delay and surprise, by giving notice of some particular grounds of defence, not usually expected, that the plaintiff may come prepared with the requisite proof. But when notice is once effectually given, it must be considered as applying to each subsequent trial of the same suit. In the present case we think the actual defence made on this ground in a former trial, before the rule went into operation, was a sufficient notice, to put the plaintiff on his guard in this respect, and that the judge was correct in deciding, that this was a sufficient compliance with the rule.

The plaintiff offered the note, together with the testimony in the case, as evidence under the money counts, and insisted that he had a right to recover without proof of the actual indorsement of Nathaniel Brown. The Court are of opinion that the decision of the judge at *nisi prius*, in holding that the plaintiff could not recover on the money counts, without proving the indorsement of the payee, was correct.

The case of *Boardman* v. *Gore*, 15 Mass. R. 331, rests upon the ground, that the evidence proved a loan of money by the plaintiff to the defendant, jointly with his partner Grafton, through the agency of a broker, acting in behalf of Gore & Grafton. But it was expressly held, that the plaintiff could not recover as indorsee of the note, without proving the indorsement. The recovery was independent of the note, and the note was used for no other purpose than to show, that Grafton, by offering the partnership name on the note, professed to act for the partnership, and thus raised a presumption that the money advanced by the plaintiff, went to the use of the firm. Had Boardman transferred the note to an indorsee, who had brought the action, it would have presented a very different

question, because there would have been no privity between the makers and the holder, and there would have been no evidence of a loan of money. It is upon this ground it is held, that an indorsee must prove the handwriting of the first indorser, because this gives the note its negotiable character, and enables any person to declare upon it, as an indorsed note ; but he is under no necessity of proving the handwriting of any other indorser, against whom he does not proceed, because he may strike out all but the first indorser and make the note payable to himself.

So in the present case, upon the evidence, taking the facts as stated by Edwards, the original transaction would have constituted a loan of money, between Charles Brown (and perhaps the defendant) and Shelton, without the genuine indorsement of Nathaniel Brown, that is, if Nathaniel Brown's name had been forged. I say perhaps Underwood, because he intrusted his signature with Charles Brown for that purpose, but of this it is not necessary to give an opinion. But being a loan of money only, and not a claim as indorsee of a note, it is like other choses in action not negotiable, so that his indorsement would give to no other person a title to claim the money in his own name as of his debtors.

It was contended that this might be considered as a note payable to a fictitious person and so in legal contemplation may be treated as a note payable to bearer, and pass by delivery without indorsement. But the Court are of opinion, that this is entirely unsupported by proof, and inconsistent with the proof. That a note is payable to a fictitious payee, is a matter of fact to be proved. In this case the original offer was of a note signed by Charles Brown and Underwood as makers, and Nathaniel Brown, the brother of Charles, as indorser. Nathaniel Brown was often at his brother's counting room, and transacted his business there. The handwriting resembles his and was undoubtedly intended to pass as his. If it was not actually indorsed by him, and it could be proved that it was done by any other person, through whose hands it had passed, can it be doubted that the proof would convict that person of forgery ?

But it is ingeniously argued, that any person is to be deemed fictitious to whom the note is not in fact transferred or intended

to be transferred, and who in fact has no interest or concern in it. But if this principle could be adopted it would be wholly im material whether the indorsement is genuine or not, so far as to give to the instrument the character of a negotiable note and when the indorser himself is not actually sued. For it would be always open to the dilemma, if he is a party it is a genuine indorsement, if he is not, he is a fictitious payee, and no indorsement is necessary.

One other question was raised and argued, which it may be proper to consider, because it may again arise, in case a new trial is had. The plaintiff objected to the deposition of Noah Edwards, taken by the defendant, because the defendant, by way of interrogatory, embodied therein a copy of a former deposition, of the same witness, which the plaintiff had taken for this cause. And the Court are of opinion that this objection is well founded, and the introduction of such former deposition was irregular and inadmissible.

Where one party takes a deposition, it is at his option to use it or not, as he thinks fit. And it has been held that where a deposition taken by one party is returned and filed, and the party taking it does not think proper to use it, it cannot be read by the other party without consent. One reason for this, among others, is obvious. The parties are under very different rules, in the mode of putting their questions to a deponent. The taker is restrained from asking leading questions ; the adverse party may put leading questions. A party may try the experi ment of taking the deposition of a person, known to be a willing witness for the other side ; or believing that he is favorable to his own side, finds the contrary in the progress of the examination. The adverse party, finding him a willing witness on his side, puts leading questions and gets out answers, which he could not do if he were his own witness. Now if this deposition, instead of being used at the option of the taker, may be used by the adverse party without and against his consent, it would be wholly reversing the rules of examination and going counter to the reasons on which those rules were established. If the adverse party cannot read such deposition when returned, without consent, *à fortiori* he cannot avail himself of a copy of it, and by introducing it into another deposition, make *it*

evidence for him. Nor is it necessary ; in taking the testimony
in chief and anew, the witness can state the same facts again if
they are true and he remembers them, and if they are not they
ought not to be made evidence.

But the strong, and in our judgment the decisive objection,
is, the party would be allowed to introduce a deponent as his
own witness, whom he has had the right to cross-examine, and
the adverse party has not.

There are some other objections to the admission of a depo-
sition thus taken, but those now stated are decisive.

*Note.* A new trial was granted on the ground that the ver-
dict was against the evidence, in respect to the genuineness of
the signature of the indorser.